GEORGIANA NICHOLS, Respondent, *v.* WILLIAM G. PARK, Appellant.

*Dower — land purchased under contract by a husband who causes it to be conveyed to a third person — effect of the husband's remaining in possession — it is not seizin in fact or in law — dower does not exist in land acquired by a husband after his wife has obtained a divorce — allegation as to fraudulent purpose.*

The complaint in an action to recover dower in certain premises located in the city of New York, alleged that on October 20, 1857, the plaintiff married William B. Nichols; that on February 7, 1872, Nichols made a written contract to purchase the premises in question from one Coburn, and paid the purchase price thereof; that Nichols entered into possession of the premises and continued to occupy the same down to the time of his death in 1902; that for the purpose of forestalling the plaintiff and preventing her inchoate dower right from attaching, Nichols took the title to the property in the name of his brother; that in 1877 the plaintiff obtained a decree of divorce from the said William B. Nichols in the State of Connecticut; that, by a deed dated and recorded August 25, 1886, the record title of the property was conveyed to William B. Nichols; that thereafter, by a deed dated May 15, 1901, he conveyed it to Mary Ida Nichols, who conveyed it to the defendant on November 27, 1901, with notice of the plaintiff's claim.

*Held*, that the complaint was demurrable;

That William B. Nichols had at no time such seizin in fact or in law as would entitle the plaintiff to dower in the property;

That up to the time when the plaintiff secured her divorce and the record title was conveyed to William B. Nichols, the latter only had an equitable interest to have the property conveyed to him by his brother, and that this was not such a seizin as would give rise to an inchoate right of dower;

That with respect to any interest acquired by William B. Nichols subsequent to the divorce no dower would attach;

That the allegation of the complaint with respect to the fraudulent purpose of William B. Nichols was, unless supported by facts, a mere conclusion.

APPEAL by the defendant, William G. Park, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 20th day of June, 1902, upon the decision of the court rendered after a trial at the New York Special Term overruling the defendant's demurrer to the complaint.

The complaint avers that on October 20, 1857, the plaintiff was married to William B. Nichols, who died January 10, 1902; that on February 7, 1872, " the said William B. Nichols contracted in writing with one James E. Coburn to purchase from said Coburn the premises known as Number 16 East 74th Street;" that upon informa-

tion and belief "the consideration money for the purchase of said property was paid by said William B. Nichols and by no other person;" that thereupon the said William B. Nichols entered into possession of said premises and continued so to occupy the same and to possess and enjoy the same from said February 7, 1872, down to the time of his death in 1902; that for the purpose of forestalling the plaintiff and intending to prevent the inchoate dower right and interest of the plaintiff from attaching to said property he fraudulently took record title in the name of his brother, John J. Nichols; that the said William B. Nichols wrongfully deserted the plaintiff on January 25, 1876, and on September 1, 1876, she commenced an action in the State of Connecticut against him, wherein a decree of divorce was entered September 3, 1877; that by deed dated and recorded August 25, 1886, said William B. Nichols took record title to the property, and thereafter, by deed dated May 15, 1901, and recorded May 16, 1901, made a record conveyance of the property to Mary Ida Nichols, without consideration and without parting with possession and control thereof, and said Mary Ida Nichols, by deed dated November 27, 1901, conveyed said premises to the defendant; that ever since the death of said William B. Nichols the defendant has been in occupation and claims to be the owner in fee simple of said premises, and the defendant, before he took title on October 21, 1901, "had notice of plaintiff's claim to an interest in said property, and afterwards took title thereto subject to plaintiff's equitable dower therein." Judgment is asked that it be adjudged that the holding of title by William B. Nichols in the names of his friends was in fraud of plaintiff's right of dower, and that he was the real owner from February 7, 1872, till November 27, 1901; that the defendant acquired title in fraud of plaintiff's rights and with notice thereof, and that the plaintiff has an undivided one-third interest therein.

The defendant demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of action. The demurrer was overruled by the Special Term, and from the interlocutory judgment so entered the defendant appeals.

*Harold Swain,* for the appellant.

*Alexander Thain,* for the respondent.

O'Brien, J. :

In many of its features this case is like *Phelps* v. *Phelps* (143 N. Y. 197), and the principles thereof, so far as applicable, are controlling. The learned judge at Special Term distinguished that case on the ground that it could be fairly inferred or implied from the allegations of the complaint herein "that upon payment of the agreed price the vendee might compel a specific performance by the vendor, and this was clearly such a seizin in law as would entitle him to its possession." As authority for this proposition that from such facts seizin in law would arise, reference is made to *Clybourn* v. *P., Ft. W. & C. R. Co.* (4 Ill. App. 463). Assuming that this is a correct statement of the law existing in Illinois, it does not help us, for the reason that it in no way appears that the statutes relating to the dower interest of a wife are the same in both States. In this State one who pays money for property and takes title in the name of another cannot maintain a suit for specific performance, and under such facts there is no resulting trust. It is only in case of fraud or possibly of mistake, or where the rights of creditors intervene that such a title can be successfully assailed. In *Phelps* v. *Phelps* (*supra*) the husband paid the consideration, and the case was decided upon the provisions of our own Revised Statutes, and it was said in the opinion that to such statutes "we must look for the authority for the claim of a wife to be entitled to dower in lands. To entitle the wife to dower, the husband must be seized either in fact or in law of a present freehold in the premises as well as of an estate of inheritance. That proposition follows from the language of the section in the Revised Statutes that 'a widow shall be endowed of the third part of all the lands whereof her husband was seized of an estate of inheritance at any time during the marriage.'"

The complaint herein does not expressly aver that it was contracted in writing between the husband and Coburn that the premises in question should be conveyed to the husband, but simply that the husband contracted in writing for the purchase from said Coburn of the premises. It is alleged that it was his money that paid for the property ; but from all that appears he might have intended to make a present of the money which paid for the house to his brother, to whom title was given. There was nothing to

prevent the husband from doing as he pleased with his money. He was under no duty or obligation to his wife to invest in real property so that her dower interest might attach. There is, however, the further allegation in the complaint that the husband "fraudulently" and for the purpose of forestalling the plaintiff from her dower right, "took record title * * * in the name of his brother." Admitting that the title was in the brother, all that the husband would have would be the equitable right to have the title vested in him. He certainly had not seizin in fact, nor could such an equitable interest, if any, be construed as a seizin in law. "Seisin in law," as defined in Bouvier's Dictionary (p. 976), is "a right of immediate possession." Surely the right of a husband to compel his brother to turn over the title of the property to him is not similar to the right of an heir to take property from his ancestor by descent. The latter is such a right, however, as it has been said constitutes seizin in law. Thus in Washburn on Real Property (Vol. 3 [5th ed.], p. 138), the author says: "Where there is no adverse holding the possession follows the property in the land and is in him who has the title. There is a seisin in deed and a seisin in law, and the difference between the two is that in one case an actual possession has been taken and in the other there is a right like that of an heir upon descent from his ancestor, while the possession is vacant, before he has made an actual entry."

The husband, therefore, during marriage and down to 1886, when he took title in his own name, which was after the plaintiff had secured from him a divorce, possessed at best merely an equitable right to have the property conveyed to him and this was not such seizin as gave rise to inchoate right of dower.

The only material fact averred in addition to those appearing in *Phelps* v. *Phelps* (*supra*) is, that here it is alleged that the husband went into possession and continued therein until his death. It is not alleged, however, that he took possession with intent to claim a freehold estate of inheritance. Not having title, or possession under claim of title, his mere possession, whatever his equitable rights, did not give him seizin in fact or in law. "It will be presumed that one in possession of land holds the possession under the owner of the legal title." (Am. Dig. [Cen. ed.] vol. 1, p. 2261, § 313; *Smith* v. *Burtis*, 6 Johns. 197, 217; *Jackson* v. *Sharp*,

9 id. 163, 167; *Sanders* v. *Riedinger*, 30 App. Div. 277, 281; affd. on opinion below, 164 N. Y. 564.)

With respect to land or an interest in land acquired by the husband subsequent to the divorce granted in 1877, terminating the marriage relation, no dower right could attach. (*Matter of Ensign*, 103 N. Y. 284; *Kade* v. *Lauber*, 16 Abb. Pr. [N. S.] 288.) We must, therefore, determine the plaintiff's right to dower upon the facts stated with respect to the husband's interest in this land in question prior to that date.

If we construe the allegations more favorably than we think the language would really justify, as intending to state facts from which the inference is to be drawn that the husband contracted to take the property in his own name, then the only interest — and that of an equitable character — to which the wife could have been entitled during the time the land was thus under contract to her husband, would have ceased after the title had been conveyed to the brother. Such an interest of the wife could, at the best, be but an equitable one to have her husband take title so that dower might attach. That such a right would, as stated, end with the transfer of title to the brother, appears from what was well said in Scribner on Dower (Vol. 1 [2d ed.], p. 442) as follows: " The general rule is that if the husband during his lifetime dispose of any equitable estate he may have in lands, the dower right of his wife therein will be defeated. It is only in such equitable interests as he may possess at the time of his death that she can claim dower. 'The principle of the Revised Statutes,' says the chancellor in *Hawley* v. *James* (5 Paige, 318, 453), ' extends only to those cases in which the equitable interest of the husband in the trust property continues down to the time of his death, so as to be inheritable by his heirs. And if he aliens it in his lifetime, the widow will not be entitled to dower therein as against the grantee.' And this is the general doctrine of the authorities and in some states is expressly declared by statute."

To summarize, therefore, taking the inferences as we must, most favorable to sustaining the pleading, and hence regarding the allegations as equivalent to statements that the husband contracted to receive the property in his own name ; that he paid the consideration with his own money ; that he took the title in the name of his brother so as to prevent the dower right attaching, and that he

entered into possession and continued in it until the time of his death, neither one nor all of such facts together would show that he ever had a freehold estate of inheritance prior to the time of his taking title in his own name, which was long after the dower interest of the wife could attach ; or that under the contract he had any equitable interest to which the dower right could attach after the conveyance to the brother, or that his possession after the title had been conveyed to the brother was with intent to claim a freehold interest in the land. It follows then that at no time had he any such seizin in fact or in law as to entitle the wife to dower in the property.

This case is clearly distinguishable from those like *Youngs* v. *Carter* (10 Hun, 194) or *Douglas* v. *Douglas* (11 id. 406), wherein it was attempted to deprive the wife of her dower rights by fraud ; for, although it is charged here that what the husband did was fraudulent, this is a mere conclusion and, unless supported by the facts alleged, it must fall. As stated, the husband was under no obligation to take his money, in which the wife had no interest, and put it in land in his own name, so that she might obtain a dower interest. Nor is it like *Howe* v. *Learey* (62 Hun, 240) or *Poillon* v. *Poillon* (N. Y. L. J. Apr. 30, 1902), where, after inchoate right of dower attached, the husband sought to destroy it by fraudulent means. But we think, as already said, that this case is similar to and is controlled by *Phelps* v. *Phelps* (*supra*), and is not distinguishable either in principle or upon the facts.

The further contention that the complaint does not allege proper notice to the defendant, we think it unnecessary to discuss for the reason that, in our view, the facts alleged are insufficient to show that the wife has any dower interest in the property. Upon that ground, therefore, the demurrer should have been sustained.

It accordingly follows that the interlocutory judgment should be reversed, with costs to the appellant, and the demurrer sustained, with costs, but with leave to the plaintiff to plead over upon payment of costs in this court and in the court below.

VAN BRUNT, P. J., PATTERSON, McLAUGHLIN and LAUGHLIN, JJ., concurred.

Judgment reversed, with costs, and demurrer sustained, with costs, with leave to plaintiff to plead over on payment of costs in this court and in the court below.