(24 Misc. Rep. 139.)

## In re VERY'S ESTATE.

(Surrogate's Court, Cattaraugus County.  June, 1898.)

1. HUSBAND AND WIFE—MEDICAL SERVICES—ALLOWANCE BY EXECUTOR.
   A claim for medicines and medical services furnished a married woman is not a proper charge against her estate, the husband being liable therefor; and where he, as his wife's executor, pays such claim, he is not entitled to credit for it on his account.

2. SAME—FUNERAL EXPENSES.
   A husband is entitled to credit on his account as executor of his wife's will, for her funeral expenses paid by him.

3. EXECUTOR—CLAIMS AGAINST ESTATE.
   An executor who was the life tenant of decedent's real estate had no right to pay insurance, taxes, and cost of repairs thereon out of decedent's personal estate.

4. LIFE TENANT—LIABILITIES.
   A life tenant, who was executor of an incumbered estate, is bound to pay interest on the incumbrance accruing during continuance of his estate; and he is not entitled to reimbursement therefor out of decedent's personal estate.

5. SALE OF DECEDENT'S ESTATE.
   Under Code Civ. Proc. § 2759, subd. 5, providing that all personal property applicable to payment of decedent's debts shall first be so applied, and that it must appear that the same was insufficient before the realty can be sold to pay them, a decree for the sale of decedent's lands to pay her debts cannot be made where the personal estate was sufficient therefor, and the executor has misapplied it.

Petition by E. W. Very, as executor of the last will and testament of Nellie E. Very, deceased, for a decree to sell the lands of deceased for the payment of her debts. Petition dismissed.

J. J. Inman, for petitioner.
W. K. Harrison, special guardian, pro. per.
W. R. Pinder, for subsequent mortgagee.
J. G. Johnson, for creditors.

DAVIE, S. The decedent died at Salamanca, on May 19, 1895, leaving a will, which was admitted to probate on May 31st of the same year; and on that day letters testamentary were issued to E. W. Very, the executor named in the will, who is the petitioner in this proceeding. The will directs the payment of all the decedent's just debts, and gives and bequeaths the use and income of the remainder of the estate, both real and personal, to the petitioner; at his death, such remainder to go to the two sons of the testatrix, share and share alike, absolutely. The total amount of the personal estate coming into the hands of the executor was $2,096.50; the total amount of the debts paid by him, $1,098.46; debts remaining unpaid, $281.51. The executor has also paid the funeral and burial expenses, including a marker at the grave, to the amount of $264.93. No controversy arises in regard to any of these items. At the time of the death of the testatrix, a part of the land described in the petition was incumbered by a mortgage, held by one Susan Very, to the amount of $150. This incumbrance had been placed upon the land by a prior owner, and the land came to the testatrix charged with such mortgage; but

she had not become personally liable for the payment of the mortgage indebtedness. This mortgage was paid off by the executor. A portion of the lands was also incumbered by a mortgage thereon to one C. S. Hubbell to the amount of $250. This mortgage was given by the testatrix, and her bond accompanied the same; and this indebtedness, $250 principal and $14 interest, was paid by the executor. The testatrix had also executed and delivered to the Salamanca Loan & Building Association another mortgage upon said premises, providing for monthly payments, in accordance with the regulations of such association. The executor has paid upon the principal of this mortgage the sum of $177.50; interest, $88.75; and fines, $5.40. The executor has also paid for medicines purchased for, and medical attendance upon, the testatrix. He has, moreover, paid the taxes, insurance, and expense of temporary repairs upon the real estate. He has expended considerable sums in making permanent improvements, and has thereby undoubtedly enhanced the value of the premises. The contestant objects to the allowance of all these items for medical attendance, taxes, repairs, improvements, interest, and to all payments made upon incumbrances, upon the ground that none of them are proper disbursements to be taken into consideration in determining the question as to whether or not the real estate should be sold for payment of debts.

The payments for medicines and medical services are not proper charges against the estate. The primary liability rests upon the husband to provide his wife with necessaries suitable to her station in life. 2 Kent, Comm. (7th Ed.) 128; Freeman v. Coit, 27 Hun, 450. There is no evidence that the testatrix ever assumed the payment of these bills, or in any manner charged her estate with the payment of the same; and the husband, although having extinguished these obligations, is not entitled to be reimbursed therefor out of the estate.

A different rule prevails in regard to the funeral expenses, although it is difficult to discover any substantial reason for the distinction. It seems, however, to be well-settled law that the husband, on the settlement of his accounts as executor of the will of his wife, should be allowed out of her estate the necessary and proper funeral expenses paid by him. McCue v. Garvey, 14 Hun, 562.

The expenses incurred by the executor for insurance, taxes, and repairs cannot be allowed in this proceeding. They were not debts of the testatrix, within the meaning of the statute under which this proceeding is brought. Moreover, the executor was personally liable for the same. Under the will, he was tenant for life of all the lands described in the petition, and, as such life tenant, he was under obligation to pay all taxes assessed upon the estate and all betterments that are not permanent in their nature. 6 Am. & Eng. Enc. Law, p. 882; Sidenberg v. Ely, 90 N. Y. 257; Deraismes v. Deraismes, 72 N. Y. 154.

Nor can such tenant make repairs of a permanent character upon the property at the expense of the inheritance. He is bound to make repairs at his own expense. The making of permanent improvements is a voluntary act on his part, which gives no claim on the reversion. 6 Am. & Eng. Enc. Law, p. 882. In relation to the pay-

ments made by the executor upon the incumbrances, it is a well-established principle "that where there is an estate for life, and a remainder in fee, and there exists an incumbrance binding the whole estate in the land, and no special equities between the remainder-man and the tenant for life can be shown, the latter is bound to pay the interest accruing during the continuance of his life estate, and the owner of the future estate is to pay off the principal of such liens." Moseley v. Marshall, 22 N. Y. 202; House v. House, 10 Paige, 158; 4 Kent, Comm. 74.

In view of the fact that I have reached the conclusion that this proceeding must be dismissed, I have refrained from passing upon the various items of the executor's account, except in a very general way, not wishing to prejudice the rights of the parties interested when their respective equities come before some other tribunal for adjustment. I have examined such accounts to a sufficient extent to make it entirely clear that the total amount of the indebtedness of this estate, including funeral expenses, is considerably less than the value of the personal assets coming into the hands of the executor. It is very clear from the evidence that such assets would have been ample for the payment of all debts and funeral expenses had not the executor consumed a considerable portion thereof in paying for improvements, taxes, insurance, and upon incumbrances. The question thereby presented resolves itself simply into this: If the personal estate coming into the hands of an executor is more than sufficient to pay all the indebtedness and the funeral expenses, and such personal estate is misapplied by the executor, can the creditors resort to the real estate for the payment of their demands? This question cannot be answered in the affirmative upon the authority of In re Bingham, 127 N. Y. 296, 27 N. E. 1055. It was there held that the rights of creditors to the payment of their debts out of the proceeds of the sale of real estate, in the absence of proof of laches on their part, may not be denied because of the fact that the executor has squandered the personal estate. An examination of the facts upon which that case was decided shows that the debts amounted to over $30,000, while the personal estate did not exceed $5,000, so that no amount of prudence or diligence on the part of the executor could have resulted in the payment of the debts from the personalty. The case of Kingsland v. Murray, 133 N. Y. 170, 30 N. E. 845, however, seems directly in point. In that case, like the one at bar, it appeared that the decedent left personal estate sufficient to pay all his debts, had the same been properly applied; and it was held that, if the administrator had wasted or squandered the personal property, so that it became insufficient to pay debts, the creditors could not resort to the real estate. It is expressly provided that, before a decree can be made for the disposition of the real estate of a decedent for the payment of debts, it must be made to appear that all the personal property of the decedent which could have been applied to the payment of his debts and funeral expenses has been so applied; or that the executor has proceeded with reasonable diligence in converting the personal property into money, and applying it to the payment of the debts and funeral expenses, and that it is insuffi-

cient for the payment of the same. Code Civ. Proc. § 2759, subd. 5.

The petition in this proceeding should be dismissed. A decree will be accordingly entered to that effect. The fees of the stenographer, to the amount of $————, and the fees of the special guardian, to the amount of $10, should be paid by the executor out of any funds now in his hands, or which may hereafter come into his hands, belonging to the estate. Decreed accordingly.