entered upon the discharge of his duties as a constable, and continued to act as such up to the time he served the summons in the case at bar. He was at least acting upon a colorable right to the office, for he had been legally appointed, and he had acted as a constable a sufficient length of time so that it could be presumed that he was properly appointed, and it is very doubtful, under the circumstances of this case, when the officer had been acting for more than a year under an appointment to the office from the proper appointing power, and holding himself out to the public as a constable, and performing the duties pertaining to the office without question from any quarter, whether his acts can be attacked in a collateral manner to the prejudice of an entirely innocent party. See Hand v. Deady, 79 Hun, 75, 29 N. Y. Supp. 633. At least Mr. Jump was a de facto officer, and his acts while performing the duties of the office to which he had been appointed should be upheld. Dolan v. Mayor, 68 N. Y. 278, 23 Am. Rep. 168; Wilcox v. Smith, 5 Wend. 234, 21 Am. Dec. 213. The case of Fowler v. Bebee, 9 Mass. 231, 6 Am. Dec. 62, cited by counsel for the respondent, is important, and bears on the precise question raised by this appeal. In that case it was clear that the sheriff's appointment was illegal, but the court held that he was in fact the sheriff of the county. Even assuming that the appointment of November 16, 1901, was of no legal effect, it seems clear that Mr. Jump could act under the prior appointment until his successor had been chosen and had qualified, even though the time for which he had been appointed had expired. Public Officers Law, Laws 1892, p. 1657, c. 681, § 5. I think the person who served this summons was a de facto officer, performing the duties of the office to which he had been legally appointed in 1900. No objection was made at any time to the regularity of the service, as the defendant did not appear at the time the summons was returnable; and on the whole case I am convinced that the acts of the officer while he was in fact such, and performing the duties of the office with the knowledge of the community that he was such acting officer, should not be disturbed, and that justice requires the affirmance of the judgment. Judgment appealed from must be affirmed, with costs.

Judgment affirmed, with costs.

---

(43 Misc. Rep. 577.)

In re WEINSTEIN'S ESTATE.

(Surrogate's Court, New York County. May, 1904.)

1. LEGACIES—TIME OF VESTING.

Where a payment of a legacy given absolutely is deferred until the death of the husband of testatrix, the legacy does not fail because the legatee dies before the husband, but after the testatrix.

2. WILLS—CONSTRUCTION—CONVERSION.

A will authorized executors to sell lands to pay legacies limited to an amount which was evidently intended to exhaust the entire estate, and, in the event of a surplus of a certain amount remaining, legacies to that amount were given, made payable out of that surplus only. On the sale there was a surplus greater than all the legacies, and there was no resid-

---

¶ 2. See Conversion, vol. 11, Cent. Dig. § 44.

uary clause. *Held*, that the land sold was converted by the sale into personalty, to the extent of the legacies, but that the surplus must be regarded as realty, passing to the heirs.

Judicial settlement of the accounts of the executor of the will of Caroline Weinstein, deceased. Decree rendered.

Kurzman & Frankenheimer, for executrix.
Fleischman & Fox, for Charles Rosenbaum and other heirs.

THOMAS, S. The legacy of $500 to Sarah Hamburger, who was living at the time of the death of the testatrix, did not lapse because of the death of the legatee in the lifetime of the husband of the testatrix, though such legacy was payable only at his death. Mitchell v. Knapp (Sup.) 8 N. Y. Supp. 40; Loder v. Hatfield, 71 N. Y. 97. The amount of this legacy will be paid to the administrator of Sarah Hamburger.

The twenty-eighth clause of the will does not assume to pass the general residue of the estate of the testatrix, in excess of the legacies, specifically limited as to their amounts, therein set forth. The testatrix was clearly of the opinion that the legacies contained in clauses 5 to 27, inclusive, would probably exhaust her entire estate, and might not suffice to pay all of such legacies in full, and she carefully designated those of them which should abate if any abatement was found necessary. She supposed it possible that there might be a surplus, not exceeding $1,600, and therefore made legacies to that amount, payable only out of such surplus; such legatees to share in such surplus ratably, if it should not suffice to pay them in full. As a matter of fact, the estimate of the testatrix of the value of her estate at the time she made her will, and up to the time of her death, was correct. Subsequent to her death the parcel of real estate, which was her principal asset, greatly rose in value, and was sold for a price which leaves a surplus over and above all legacies in the hands of the executors. As to such surplus the testatrix died intestate. The surplus thus created is a part of the proceeds of land sold under a power. The power directed a sale for the payment of legacies, and, to the extent of the legacies, the land was legally converted into personalty. The surplus over legacies is, however, for the purpose of determining the rights of persons claiming to take under the laws governing intestate estates, to be treated as real property, and passes to the heirs at law of the testatrix, and not to her next of kin. Parker v. Linden, 113 N. Y. 28, 20 N. E. 858, 861. If counsel do not agree as to the proportions in which division of the surplus is to be made, they may submit memoranda of their contentions on the settlement of the decree. Tax costs and settle decree on notice.

Decreed accordingly.